IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01522-GPG

KENNETH WIGGINS,

　　　　Applicant,

v.

BRAD HOOKS, and
THE COLORADO ATTORNEY GENERAL,

　　　　Respondents.
_____

ORDER OF DISMISSAL
_____

　　　　Applicant, Kenneth Wiggins, is incarcerated in a Georgia state prison.  Mr.

Wiggins filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the

United States District Court for the Southern District of Georgia challenging a detainer

lodged by the State of Colorado.  The petition was transferred to this Court on July 17,

2015.  A challenge to a state detainer normally is filed pursuant to 28 U.S.C. § 2241.

*See e.g. Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 488 (1973).

Mr. Wiggins filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C.

§ 2241 (ECF No. 5) on this Court's approved form on August 24, 2015.  He has

been granted leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.

　　　　On September 28, 2015, Magistrate Judge Gordon P. Gallagher issued an Order

(ECF No. 8) adding the Colorado Attorney General as a Respondent and directing the

Respondents to file a Preliminary Response addressing the affirmative defenses of

timeliness and/or exhaustion of state court remedies, if the Respondents intended to

1

assert one or both defenses.  Respondents filed a Preliminary Response on October 19, 2015.  (ECF No. 14).  Applicant was given an opportunity to file a Reply.

The Court construes the § 2241 Application liberally because Mr. Wiggins is not represented by counsel.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.   For the reasons stated below, this action will be dismissed.

## I.  Background

On April 1, 2004, Applicant pled guilty in the Larimer County, Colorado, Combined Courts to disorderly conduct as an act of domestic violence and was sentenced to one year of probation.  (ECF No. 14-1 at 3-4, 7).  Thereafter, the prosecution twice filed motions to revoke his probation.  (*Id.* at 6-7).  The prosecution withdrew the first motion pursuant to a plea agreement in which Applicant pled guilty in a separate misdemeanor case.  (*Id.*).  The second probation revocation proceeding resulted in Applicant serving thirteen days in jail. (*Id.* at 6).

On October 18, 2005, the prosecution filed a third motion to revoke probation. (*Id.*).  Applicant failed to appear at a revocation hearing scheduled for December 2, 2005, and the court issued a warrant for his arrest.  (*Id.* at 5-6).

In July 2012, Applicant began serving an eight-year sentence in the custody of the Georgia Department of Corrections for the offenses of theft committed on September 17, 2009 and robbery committed on May 1, 2012.  (ECF No. 14-5).

On August 4, 2015, Applicant filed a letter with the Larimer County Combined Courts asking the court to reach a disposition of the December 2005 arrest warrant

because it was preventing his transfer from a Georgia state prison to a half-way house. (ECF No. 14-2).  The prosecution declined to resolve the case by mail on the grounds that such a resolution would be inappropriate and the warrant was necessary to assure Applicant's return to Colorado upon completion of his prison sentence.  (ECF No. 14-3). On August 12, 2015, the state court denied Applicant's request for the reasons stated in the prosecution's response.  (ECF No. 14-4).

In the § 2241 Application, Applicant claims that the State of Colorado's failure to transfer him to Colorado to resolve his misdemeanor case violated the speedy trial provisions of the Interstate Agreement on Detainers Act (IAD).  (ECF No. 5).  He asks that the outstanding Colorado warrant be dismissed.  (*Id.* at 7).

Respondents argue that the Court lacks subject matter jurisdiction over the § 2241 Application, pursuant to the doctrine of *Younger* abstention, and because Applicant fails to allege that he is in custody in violation of federal law.  (ECF No. 14 at 5-10).  Respondents further contend that the action is untimely under the AEDPA one-year limitation period, and that Applicant failed to exhaust available state court remedies prior to seeking federal habeas corpus relief.  (*Id.* at 11-13).

## II.  Analysis

### A.  In Custody Requirement

An applicant for federal habeas corpus relief must be "in custody."  28 U.S.C. § 2241(c)(1)(3). The applicant must be "in custody" under the challenged conviction or sentence at the time his habeas petition is filed.  *See Maleng v. Cook*, 490 U.S. 488, 490-91 (1989); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  The "in custody" requirement is jurisdictional.  *See McCormick v. Kline*, 572 F.3d 841, 847-48 (10th Cir. 2009).

Mr. Wiggins meets the "in custody" requirement if he is subject to a state detainer that has been lodged with the Georgia authorities because the detainer may result in his confinement in a Colorado correctional institution in the future.   *See Braden*, 410 U.S. at 488-89 (a petitioner who is subject to a state detainer seeks to challenge a future confinement and therefore, satisfies the "in custody" requirement).   However, Respondent Colorado Attorney General represents that the outstanding Colorado arrest warrant was never lodged as a detainer with the Georgia authorities.  (ECF No. 14 at 7).  Regardless, Respondents concede, and the Court agrees, that Applicant meets the "in custody" requirement because the Colorado arrest warrant issued due to his failure to appear at his probation revocation hearing is still active.  *See*, *e.g.*, *Cabrera v. Zavaras*, No. 07-1342, 261 F. App'x. 102, 104 (10th Cir. Jan. 16, 2008) (unpublished) (petitioner who was caught illegally reentering the country and detained in Las Cruces, New Mexico, due to an active Colorado arrest warrant for his parole violation was in custody for purposes of § 2254(a)).

Furthermore, Applicant also meets the "in custody" requirement because he was free on a $2,500 bond securing his appearance at the time he absconded (ECF No. 14-1 at 8-9).  *See Oyler v. Allenbrand*, 23 F.3d 292, 293 (10th Cir. 1994) (concluding that petitioner was in custody where he filed his habeas petition while on bond pending appeal but before his sentence had been reduced to probation and before he began to serve that probation); se*e also United States ex rel. Grundset v. Franzen*, 675 F.2d 870, 872 (7th Cir.1982) (custody requirement satisfied by person on bail pending final disposition of his case); *Marden v. Purdy*, 409 F.2d 784, 785 (5th Cir. 1969) (that

applicant was free on a cash bond when he filed his petition "was a sufficient restraint on this applicant's liberty to support habeas jurisdiction").

The Court finds that Applicant was "in custody" for the purposes of challenging the outstanding Colorado arrest warrant charging him with failure to appear at a probation revocation hearing.

### B. *Younger* abstention

To the extent Mr. Wiggins seeks to stop Colorado's prosecution of the probation revocation proceeding, this Court lacks jurisdiction over the claim under *Younger v. Harris.*

Absent extraordinary or special circumstances, federal courts are prohibited from interfering with ongoing state criminal proceedings. *See Younger v. Harris*, 401 U.S. 37 (1971); *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997). The rationale for abstention is that a "federal court should decline to exercise its jurisdiction in the interest of comity and federalism," as well as "avoidance of needless friction with state policies." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 714, 717-18 (1996). Abstention is appropriate under *Younger* if three conditions are met: "(1) the state proceedings are ongoing; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to present the federal constitutional challenges." *Phelps*, 122 F.3d at 889. The abstention principles of *Younger* are jurisdictional and apply whether the plaintiff seeks equitable or monetary relief. *See D.L. v. Unified School Distr. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004); *Parkhurst v. Wyoming*, 641 F.2d 775, 777 (10th Cir.1981).

The first condition for *Younger* abstention is met because Applicant's Colorado criminal case is pending.  The second and third conditions are also satisfied because Colorado provides an adequate forum to hear Applicant's challenges to the probation violation charge(s) once he is released by the Georgia Department of Corrections and is returned to Colorado to conclude his probation revocation proceeding.  Furthermore, the Supreme Court "has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986) (citing *Younger*, 401 U.S. at 44-45).

Mr. Wiggins "may overcome the presumption of abstention 'in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown.'" *Phelps*, 122 F.3d at 889 (quoting *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)).

Courts have considered three factors in determining whether a prosecution is commenced in bad faith or to harass:

> (1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions.

*Phelps*, 122 F.3d at 889.  It is Applicant's "'heavy burden' to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment." *Id.*

Mr. Wiggins does not allege specific facts to show that the prosecution has acted in bad faith in filing a probation revocation complaint against Applicant.

Finally, Applicant has not shown an irreparable injury stemming from the state court criminal prosecution. Although Mr. Wiggins may bring a § 2241 proceeding to "demand enforcement of the [State's] affirmative constitutional obligation to bring him promptly to trial," *Braden*, 410 U.S. at 489-90, that is not the relief Applicant seeks. Instead, Applicant asks the Court to intervene in a pending state court criminal prosecution and order that the outstanding arrest warrant be dismissed because of a speedy trial violation. *See Capps v. Sullivan*, 13 F.3d 350, 353 (10th Cir. 1993) ("[An] attempt to dismiss an indictment or otherwise prevent a prosecution . . . is normally not attainable by way of pretrial habeas corpus; but an attempt to force the state to go to trial may be made prior to trial, although state remedies must still be exhausted.") (internal quotation marks and citations omitted); *see also Braden*, 410 U.S. at 491 (stating that in federal court, a petitioner may not seek "to forestall a state prosecution, but to enforce the [State]'s obligation to provide him with a state court forum."). Furthermore, Mr. Wiggins bears the blame for failing to appear at the probation revocation hearing scheduled for December 2, 2005. And, finally, the fact that Mr. Wiggins will be forced to appear in a Colorado state court for a future probation revocation proceeding, by itself, is not sufficient to establish great and immediate irreparable injury. *See Younger*, 401 U.S. at 46; *Dolack v. Allenbrand*, 548 F.2d 891, 894 (10th Cir.1977).

If Mr. Wiggins ultimately has his probation revoked in state court and he believes that his federal constitutional rights were violated in obtaining that revocation, he may

pursue his claims in federal court by filing a § 2254 application after he exhausts state remedies.

The Court finds that *Younger* abstention applies to Applicant's request that the outstanding Colorado probation revocation warrant be dismissed.

### C.  Failure to Exhaust State Remedies

Respondents also contend that Applicant failed to exhaust available remedies in Colorado before seeking federal habeas relief.   (ECF No. 14 at 12-13).

Exhaustion of available state court remedies is necessary before a federal court will entertain a pretrial habeas petition.  *See Braden*, 410 U.S. at 489-90; *Capps*, 13 F.3d at 354; *see also Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000).  The exhaustion doctrine requires a habeas applicant to fairly present his federal claim in the state district and appellate courts.  *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

Applicant's letter to the Larimer County Combined Courts requesting resolution of his warrant did not allege a violation of the IAD or federal constitutional law.  Further, Applicant did not attempt to appeal the state district court's decision.  Accordingly, the Court finds that Applicant failed to exhaust state court remedies before seeking federal habeas relief.

### D.  Timeliness of Application

Respondents next assert that this action is barred by the AEDPA one-year limitation period.  (ECF No. 14 at 11-12).

The AEDPA one-year limitation period, codified at 28 U.S.C. § 2244(d), applies

to § 2241 actions filed by persons in state custody.  *See Dulworth v. Evans*, 442 F.3d

1265, 1268 (10th Cir. 2006); *Burger v. Scott*, 317 F.3d 1133, 1138 (10th Cir. 2003).  The

statute provides, in relevant part:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
>> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In this case, the limitation period commenced either on December 2, 2005, when

the Colorado arrest warrant issued after Mr. Wiggins failed to appear for a probation

revocation hearing, or no later than September 29, 2009, when he requested a copy of

the NCIC report showing the existence of the Colorado warrant.  (*See* ECF No. 14-2 at

3, 5-6).  Assuming that the one-year period commenced as late as September 29, 2009,

it expired one year later.  Applicant's August 2015 letter to the Larimer County Combined Courts requesting resolution of the outstanding arrest warrant did not toll the limitations period, which had already passed.  *See Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2004) ("Only state petitions for post-conviction relief filed within the one year allowed by AEDPA will toll the statute of limitations.");  *Fisher v. Gibson*, 262 F.3d 1135, 1142-43 (10th Cir. 2001)(same).  Accordingly, this § 2241 action, which was initiated on July 17, 2015, is time-barred unless equitable tolling applies.

The one-year limitation period in 28 U.S.C. § 2244(d) is not jurisdictional and may be tolled for equitable reasons "in rare and exceptional circumstances."  *See Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000)(internal quotation marks omitted); *see also Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998).  Equitable tolling may be appropriate if (1) the petitioner is actually innocent; (2) an adversary's conduct or other extraordinary circumstance prevents the petitioner from timely filing; or (3) the petitioner actively pursues judicial remedies but files a defective pleading within the statutory period.  *See Holland v. Florida*, 560 U.S. 631, 649 (2010); *Gibson*, 232 F.3d at 808. Simple excusable neglect is not sufficient to support equitable tolling.  *Gibson*, 232 F.3d at 808.  Furthermore, equitable tolling is appropriate only if the petitioner pursues his claims diligently. *Miller*, 141 F.3d at 978.  The petitioner must "allege with specificity 'the steps he took to diligently pursue his federal claims.'" *Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008) (quoting *Miller*, 141 F.3d at 978)).

Mr. Wiggins does not allege any facts in the § 2241 Application to meet his burden of demonstrating that equitable tolling is appropriate in this action.  Accordingly, the Court finds that this § 2241 proceeding is also subject to dismissal as time-barred.

**E. Failure to State a Violation of Federal Law**

A state prisoner is entitled to relief only if he is held "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c).

Applicant claims that the Colorado authorities' refusal to extradite him to Colorado to resolve the probation violation charge contravened the IAD.

The IAD is a compact among forty-eight states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States. *See Carchman v. Nash*, 473 U.S. 716, 719 (1985). Adopted as law by the State of Colorado, *see* COLO.REV.STAT. § 24-60-501, *et seq.,* the IAD is a "congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction." *Carchman*, 473 U.S. at 719; *see also Knox v. Wyo. Dep't of Corrs. State Penitentiary*, 34 F.3d 964, 967 (10th Cir. 1994). As explained by the United States Supreme Court in *Carchman*:

> Article III [of the IAD] . . . , establishes a procedure by which a prisoner incarcerated in one State (the sending State) may demand the speedy disposition of "any untried indictment, information or complaint" that is the basis of a detainer lodged against him by another State (the receiving State). If the prisoner makes such a demand, Art. III requires the authorities in the receiving State to bring him to trial within 180 days or the court must dismiss the indictment, information, or complaint, and the detainer will cease to be of any force or effect.

473 U.S. at 716.

Respondent Colorado Attorney General argues that the IAD does not apply because the Larimer County District Attorney's Office has informed Respondent that no official detainer has been lodged with the Georgia Department of Corrections. (ECF No. 14 at 7). Rather, the Colorado arrest warrant issued in December 2005 was placed into the NCIC data base six and a half years before Applicant began serving his Georgia

prison sentence.  (*Id.*).  As such, Respondent's maintain that there is no "detainer" subject to the requirements of the IAD.  *See Johnson v. People,* 939 P.2d 817, 820-821 (Colo. 1997) (stating that the IAD does not apply unless the requesting state lodges a detainer with the official in the party state that has custody of the prisoner).

Undoubtedly, if no detainer was lodged with the appropriate officials in Georgia, the speedy trial provisions of Article III of the IAD do not apply.  However, even if the Colorado arrest warrant was lodged as a detainer with the Georgia authorities, Applicant cannot avail himself of the IAD.

"Article III [of the IAD] by its terms applies to detainers based on 'any untried indictment, information or complaint.'" *Carchman*, 473 U.S. at 724. "The language of the Agreement therefore makes clear that the phrase 'untried indictment, information or complaint' in Art. III refers to criminal charges pending against a prisoner." *Id.* at 725. "A probation-violation charge, which does not accuse an individual with having committed a criminal offense in the sense of initiating a prosecution, thus does not come within the terms of Art. III." *Id.*  Therefore*,* "a detainer based on a probation-violation charge is not a detainer based on 'any untried indictment, information or complaint,' within the meaning of Art. III." *Id.* at 726; *see also McDonald v. N.M. Parole Bd.*, 955 F.2d 631, 633 (10th Cir. 1991) (under *Carchman*, the IAD "has no applicability to probation or parole revocation detainers").  Because Applicant complains about a pending parole revocation charge, the IAD does not apply and, therefore, he is not entitled to federal habeas relief based on an alleged violation of the IAD.

Furthermore, the Constitution does not afford Applicant an entitlement to an immediate probation violation hearing.  Under *Gagnon v. Scarpelli*, 441 U.S. 778

(1973), a probationer is entitled a preliminary and final revocation hearing in accordance

with the due process requirements set forth for parolees in *Morrissey v. Brewer*, 408

U.S. 471 (1972) (holding that a parolee is entitled to two hearings -- a preliminary

hearing at the time of his arrest and detention to determine whether there is probable

cause to believe that he has committed a violation of his parole; and a more

comprehensive hearing prior to the making of the final revocation decision.).   However,

the due process requirements are not triggered until the probationer is taken into

custody for the probation violation.  *See Moody v. Daggett*, 429 U.S. 78, 86 (1976)

(rejecting claim by parolee that he was entitled to an immediate probation revocation

hearing following the lodging of a detainer with an incarcerating institution, before he

was taken into custody as a parole violator); *see also Carchman*, 473 U.S. at 731 n. 10

("This Court has never held, however, that a prisoner subject to a probation-violation

detainer has a constitutional right to a speedy probation-revocation hearing.").

Accordingly, Mr. Wiggins is not entitled to a probation revocation hearing until he is

taken into custody pursuant to the Colorado arrest warrant, an event that will not occur

until after he has completed his incarceration for the Georgia convictions.  *See McNeal*

*v. United States,* 553 F.2d 66, 68 (10th Cir.1977) (due process right to a revocation

hearing does not attach while federal parolee is serving an intervening state sentence).

 And, finally, to the extent Applicant claims that that the existence of the Colorado

warrant is prejudicing his ability to be transferred to a half-way house in Georgia, in

violation of his constitutional rights, his claim challenges the conditions of his

confinement and is not cognizable in habeas corpus.  *See Cabrera v. Trammell*, No. 12-

7008, 488 F. App'x 294, 295 (10th Cir. July 6, 2012) (unpublished) (denying § 2241

petition and stating that "[i]f Mr. Cabrera intended to challenge the Oklahoma facility's reliance on the detainer in denying him a transfer, that complaint should have been lodged under 42 U.S.C. § 1983.").

The Court has determined that several alternative grounds support dismissal of this action and does not reach Respondents' additional argument that the action is untimely under 28 U.S.C. § 2244(d).

## III.  Orders

For the reasons discussed above, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 5), filed by Applicant, Keith Wiggins, is DENIED.  Applicant's request that the Court stop the State of Colorado's prosecution of the pending probation violation charge is dismissed without prejudice under the abstention doctrine of *Younger v. Harris.*  In the alternative, this action is dismissed without prejudice for Applicant's failure to exhaust state court remedies.  The § 2241 application is also subject to dismissal as untimely under 28 U.S.C. § 2244(d), and fails to state a violation of Applicant's rights under federal law.  It is

FURTHER ORDERED that no certificate of appealability will issue because jurists of reason would not debate the correctness of this procedural ruling and Mr. Wiggins has not made a substantial showing of the denial of a constitutional right. It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied for the purpose of appeal.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Mr. Wiggins files a notice of appeal

he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED November 19, 2015, at Denver, Colorado.

BY THE COURT:


  s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court